# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

| | | |
|---|---|---|
| **LARRY STEPHENS AND DEBORAH STEPHENS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 2:07CV128-ID** |
| | ) | |
| **STRONGBUILT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO PRECLUDE CERTAIN OPINIONS OF THE PLAINTIFFS' RETAINED EXPERT, DR. RAYMOND THOMPSON

Comes now the defendant, **STRONGBUILT, INC.**, and moves this Honorable Court to enter an order precluding certain opinions of the plaintiffs' retained expert, Dr. Raymond Thompson.   In support of this motion, the defendant submits the following:

1.      Dr. Raymond Thompson is the only named expert for the plaintiffs.  Dr. Thompson is the manager of Vista Engineering & Consulting, LLC and is the president of Vista Engineering, Inc.  He earned a B.S.E. from UAB in Materials Engineering in 1974, an M.S.E. from UAB in Materials Engineering in 1975, and a Ph.D. from Vanderbilt University in Materials Science & Engineering in 1979.  Dr. Thompson is a registered professional engineer in the states of Alabama, Arkansas and South Carolina.

2.    Vista Engineering, Inc. is in the diamond technology business.    In particular, Vista Engineering grows diamonds for various drill bits.  Vista Engineering & Consulting, LLC is in the engineering consulting business including consulting in cases involving civil litigation.

3.    Dr. Thompson describes himself as a metallurgist.  (Thompson Depo., p. 162)  However, Dr. Thompson has no education, training, experience or expertise with respect to the product involved in this litigation, a hunting ladder stand. Although Dr. Thompson has training and experience in metallurgy, he has no education, training or experience with hunting tree or ladder stands.  Specifically, Dr. Thompson testified as follows with respect to his lack of expertise and experience with hunting stands:

A.    He has never designed any type of tree or ladder stand in his life. (Thompson depo., p. 28)

B.    He has never manufactured any type of tree or ladder stand in his life. (Thompson depo., p. 28)

C.    He has never worked for a company that has ever designed or manufactured any type of tree or ladder stand.  (Thompson depo., p. 28)

D.    He has never consulted with a company that has ever designed or manufactured any type of tree or ladder stand.  (Thompson depo., p. 28)

E.    He has never served as an expert witness in any other tree or ladder stand case.   (Thompson depo., p. 26)

F.    He has never given a deposition or testified in court in any other tree or ladder stand case.   (Thompson depo., pp. 22-25)

G.    He has never owned a hunting ladder or tree stand.  (Thompson depo., p. 31)

H.    He has never done any testing on any hunting ladder or tree stand.   (Thompson depo., p. 31)

I.    He is not a hunter and has never hunted out of a ladder or tree stand.   (Thompson depo., p. 128)

J.    He has never attended any seminars on hunting safety or on tree or ladder stands.   (Thompson depo., p. 128)

K.    He is not a "human factors expert."   (Thompson depo., p. 129)

L.    He is not a certified welder with respect to any joint design whatsoever.   (Thompson depo., p. 129)

M.    He has never done any welding on a ladder or tree stand and has never worked for a manufacturer of a tree or ladder stand with respect to weld design.   (Thompson depo., p. 131)

N.    He has "no clue" how tree stands are assembled in the woods.   (Thompson depo., p. 142)

O.    He has not compared the StrongBuilt ladder stand with any other ladder stands for purposes of: (1) determining whether other

3

manufacturers have manufactured a better or safer ladder stand, or (2) coming up with an alternative design for the subject product.  (Thompson depo., pp. 161-162 )

P.    He is not an expert in the field of hunting accident reconstruction. (Thompson depo., p. 162)

Q.    He has not taken a substantially similar horizontal brace, connected it to a ladder rung, and determined how many cycles it would take to cause a failure. (Thompson depo., pp. 163-164)

4.    Dr. Thompson has expressed the opinion that the horizontal brace on the subject product broke due to "plastic deformity" as a result of "repeated bending back and forth."   The defendant does not take issue with Dr. Thompson's qualifications to express that opinion.  In fact, Dr. Thompson may very well be qualified to express that opinion based upon his training and experience in metallurgy.

However, Dr. Thompson has also expressed opinions with regard to the design of the subject product.  Specifically, Dr. Thompson is critical of the design of the horizontal brace and the "weld shape" of the factory welds on the subject product. (Thompson depo., pp. 158-159, 183, 187)

In addition, Dr. Thompson has expressed opinions with respect to foreseeable misuses of the subject product.  (Thompson depo., pp. 165-175)

The defendant submits that Dr. Raymond Thompson is not competent or qualified to express any opinions with regard to the proper design and manufacture

of the subject product or with regard to foreseeable misuses of the subject product. By Dr. Thompson's own admission, he has no training or experience whatsoever with hunting ladder stands. He has never manufactured or designed any type of hunting ladder stand. Furthermore, he has never worked for or consulted with any company that has ever designed or manufactured any type of hunting ladder stand. Moreover, he has never served as an expert witness or given any deposition or trial testimony in any other hunting ladder stand case. Dr. Thompson has never owned a hunting ladder stand and has never hunted out of a ladder stand. Dr. Thompson testified that he has "no clue" how to assemble a hunting ladder stand in the woods. He also admitted that he is not a "human factors expert" or a hunting "accident reconstruction" expert. Dr. Thompson has never attended any seminars on hunting safety or accidents involving tree or ladder stands. He has done no testing on the subject product or on any other similar product. Dr. Thompson has performed no comparative analysis of the StrongBuilt stand with stands manufactured by other manufacturers. Dr. Thompson is not a certified welder or weld inspector. He has never done any welding on any hunting ladder stand.

Suffice it to say, Dr. Raymond Thompson has no education, training, experience, or expertise to express any opinions with respect to the design and manufacture of this product. Clearly, he is not competent and qualified to express any opinions that the subject product is defective or was improperly designed and manufactured. Moreover, because Dr. Thompson has <u>zero</u> experience as a hunter and has admitted that he is not a human factors expert, he is not competent and

qualified to express any opinions with regard to foreseeable misuses of the subject product by a hunter.

The admission of expert testimony is governed by Federal Rule of Evidence 702, which requires that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 "imposes a gate-keeping function on the trial judge to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert, 509 U.S. 579, the United States Supreme Court impressed a gatekeeping role upon judges, and directed them to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Id. at 589. Daubert put forth a two-pronged analysis, used to determine the admissibility of the proffered expert testimony on scientific issues under Rule 702. First, the expert testimony must be reliable, so that it must be "scientific," meaning grounded in the methods and procedures of science, and must constitute "knowledge," meaning something more than subjective belief or unsupported assumptions. Id. at 590.

Daubert's reliability prong sets out four guideposts that a district court may consider in assessing the reliability of the expert testimony, which include, but are not limited to: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.  Id. at 593-94; Allison v. McGhan Medical Corp., 184 F.3d 1300, 1312 (11th Cir. 1999); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999).  In addition, other factors that a court may consider in the Daubert analysis are "reliance on anecdotal evidence (as in case reports), temporal proximity, and improper extrapolation (as in animal studies)." Allison, 184 F.3d at 1312.  Finally, a court should meticulously focus on the expert's principles and methodology, and not on the conclusions that they generate.  Allison, at 1312 (citing Daubert, 509 U.S. at 595).

The second prong of the Daubert analysis requires that the proposed testimony be relevant.  To meet this requirement, the expert testimony must be " 'relevant to the task at hand,' … i.e., that it logically advances a material aspect" of the case.  Daubert at 591.  The relevance requirement is not satisfied where the proffered testimony does not assist the trier of fact. Fed.R.Evid. 702.  The relationship must be an appropriate "fit" with respect to the offered opinion and the facts of the case.  See Daubert, 509 U.S. at 591.  Under Daubert, scientific testimony does not assist the trier of fact unless the testimony has a justified

scientific relationship to the pertinent facts.  See Daubert, 509 U.S. at 591.  For example, there is no fit where a large analytical leap must be made between the facts and the opinion.    See General Electric Co. v. Joiner, 522 U.S. 136 (1997)(offering animal studies showing one type of cancer in mice to establish causation of another type of cancer in humans is "simply too great an analytical gap between the data and the opinion offered").

As noted above, Dr. Thompson is not a hunting ladder stand expert.  He has no experience designing or manufacturing hunting ladder stands.   Prior to formulating his opinions regarding this incident, he did not compare this hunting ladder stand with other similar stands in the marketplace. He has never even assembled a ladder stand in the woods.  Having no experience whatsoever with hunting ladder stands, Dr. Thompson has no scientifically reliable basis for his opinion that it was foreseeable that this particular horizontal brace would be subjected to large stresses which would cause the brace to fail.  The stresses Dr. Thompson refers to are not the stresses generated by use in accordance with the Defendant's instructions.  The stresses that Dr. Thompson opines are foreseeable occurred when the hunting ladder stand was being used in a manner contrary to the Defendant's instructions.  Dr. Thompson is not qualified to testify concerning the foreseeability of the product's misuse when he has no knowledge of the product's proper use.  Dr. Thompson's testimony on the foreseeability of possible stresses should be precluded because it is based entirely on  his own unsupported assumptions.

Dr. Thompson has not researched the habits of hunter's in the woods. He has not studied the statistics from other hunting ladder stand accidents. He is not a human factors expert. There is no reliable scientific basis for his opinion that it should have been foreseeable to the manufacturer of the ladder stand that the stand's design would subject it to certain types of stresses when Dr. Thompson has no knowledge of hunters, hunting safety, or the hunting industry.

WHEREFORE, PREMISES CONSIDERED, the defendant, StrongBuilt, Inc., respectfully requests this Honorable Court to enter an order precluding any opinions of Dr. Raymond Thompson with regard to improper design of the subject product, defectiveness of the subject product and foreseeable misuses of the subject product.

/s/ David Lee
David A. Lee (LEE019)
ASB-3165-E47D
Attorney for Defendant

OF COUNSEL:
PARSONS, LEE & JULIANO, P.C.
300 Protective Center
2801 Highway 280 South
P. O. Box 530630 (35253-0630)
Birmingham, AL 35223-2480
(205) 326-6600

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served on this the <u>30th</u> day of May, 2008, a copy of the foregoing pleading via United States mail, postage prepaid and properly addressed on counsel for all parties as follows:

Dennis R. Weaver, Esq.
William H. Hassinger, Esq.
Weaver Tidmore, LLC
200 Cahaba Park Circle, Suite 214
Birmingham, Alabama 35242

<u>/s/ David A. Lee</u>
OF COUNSEL