## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA,
## NORTHERN DIVISION

| | | |
|---|---|---|
| **LARRY STEPHENS AND DEBORAH STEPHENS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 2:07CV128-ID** |
| | ) | |
| **STRONGBUILT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now the defendant, **STRONGBUILT, INC.**, and submits the following memorandum brief in support of its motion for summary judgment:

### Statement of Undisputed Material Facts

1.     The accident involved in this lawsuit occurred on December 2, 2006 in Elmore County, Alabama.  (See Complaint)

2.     The plaintiff, Larry Stephens, was injured when he fell from a ladder stand that was manufactured by defendant, StrongBuilt, Inc.  (See Complaint)

3.     Mr. Ken Killen is the President of StrongBuilt, Inc. located in Waterproof, LA.  (Killen depo., pp. 4, 7)

4.     Mr. Killen started StrongBuilt in 1985 and incorporated the business in 1986 or 1987.  (Killen depo., p. 9)

5.    StrongBuilt, Inc. is in the business of manufacturing various types of hunting products including ladder stands.  (Killen depo., p. 10)   Since the mid-1980's, StrongBuilt, Inc. has produced hundreds of thousands of tree stands. (Smith depo., p. 62)

6.    The product involved in this litigation is a 15 foot basic ladder stand ("BLS 15").  (See defendant's answer to plaintiffs' interrogatory number 9.)

7.    The BLS 15 involved in this litigation was manufactured some time between 1993 and 1996 in Waterproof, LA.  (Killen depo., p. 22)

8.    Larry Stephens' uncle, Terry Stephens, <u>claims</u> he purchased the subject product from the Prattville, AL Wal-Mart Store.  Specifically, Terry Stephens testified that he purchased four StrongBuilt ladder stands (all the same make and model) in November or December, 2004 and paid cash for the four stands but has no receipt. (Terry Stephens depo., p. 27)  According to Mr. Stephens, he paid $109.99 for each stand and distributed all four stands as Christmas gifts in 2004.   (Terry Stephens depo., pp. 12-13)  Mr. Terry Stephens testified that the products he purchased were "16 foot" ladder stands.   (Terry Stephens depo., p. 14)

9.    As stated above, the product involved in this lawsuit is a 15 foot ladder stand and not a 16 foot ladder stand.  (See defendant's answer to plaintiffs' interrogatory number 9.) The Prattville Wal-Mart <u>did</u> <u>not</u> sell any StrongBuilt BLS 15 ladder stands in November or December, 2004.  Specifically, Mr. Michael McFadden of Wal-Mart has testified that, according to the sales records for the Prattville, AL Wal-Mart Store, the last time the Prattville Wal-Mart Store sold a BLS 15 was during

the week of December 1, 2001. (McFadden depo., p. 9) The Prattville Wal-Mart Store <u>did not</u> sell any StrongBuilt BLS 15 products in the months of November and December, 2004. (McFadden depo., p. 9)

10.    Mr. David Stephens testified that he received the subject product from his brother, Mr. Terry Stephens, in December, 2004. (David Stephens' depo., p. 14) David Stephens and his son, Matt Stephens, assembled the subject stand on December 25, 2004. (David Stephens' depo., pp. 20-25) Although David Stephens cannot read, the subject product came with written instructions and labels and Matt Stephens followed those instructions when initially assembling the product. David Stephens testified that there was no confusion regarding the written instructions or the assembly of the product. (David Stephens' Depo., p. 24) Likewise, Matt Stephens testified that he had no difficulty reading and understanding the written instructions that came with the product. (Matt Stephens' depo., p. 27)

11.    The plaintiffs' retained expert, Dr. Raymond Thompson, is not critical of the written instructions and warnings that came with the subject product. (Thompson depo., p. 90)

12.    According to David Stephens, plaintiff Larry Stephens never looked at the written instructions that came with the subject stand. David and Matt Stephens were the only ones present when the stand was assembled. (David Stephens' depo., p. 100)

13.    After the subject product was initially assembled, David and Matt Stephens threw the instructions away. (Matt Stephens' depo., p. 30)

14.    It is undisputed that the subject product was altered or modified some time between the date of manufacture and the date of the accident. (Killen depo., p. 74)    Specifically, Mr. Ken Killen, President of StrongBuilt, Inc., testified that someone added an arm/gun rest to the top of the stand after the product was manufactured by StrongBuilt. (Killen depo., p. 48) In addition, someone, other than StrongBuilt, welded the arm/gun rest to the original platform. (Killen depo., p. 48) Mr. Killen testified that the stand was obviously modified because: (1) StrongBuilt does not manufacture a similar arm/gun rest, (2) the added arm/gun rest is painted with a different color paint than the original paint color on the manufactured product, (3) the welds for the added arm/gun rest were clearly not done by StrongBuilt, (4) when the arm/gun rest was welded to the original platform, the welder burned the original paint on the platform, and (5) the product, as modified, will not fit into StrongBuilt's shipping box. (Killen depo., pp. 48-51)

15.    Dr. Raymond Thompson agrees with Mr. Ken Killen that the subject product was modified some time after it was manufactured and sold. (Thompson depo., pp. 41-45)

16.    In addition to modifications to the ladder stand, the ladder stand was assembled incorrectly. Specifically, the foot platform was mounted backwards. In addition, the diagonal braces for the platform were mounted incorrectly. Furthermore, some of the bolts that came with the stand were mounted in the wrong places. (Killen depo., pp. 44-50)

17.    The accident occurred around 5:45 a.m. on December 2, 2006.  Mr. Larry Stephens was climbing the subject ladder stand and was about to enter the platform from the last ladder step when the ladder stand collapsed in towards the tree.  When the ladder stand collapsed in towards the tree, the plaintiff fell to the ground.  According to the plaintiff, the ladder stand collapsed in towards the tree because the brace that was connected from the ladder to the tree broke.  (Larry Stephens' depo., pp. 89-91, 101)

18.    The brace that allegedly broke on the day of the accident is called a "horizontal brace." It is undisputed that the horizontal brace is important to the safety and stability of the subject product. It is a support brace that connects from the ladder to the tree. StrongBuilt warns its customers that the horizontal brace is important to the overall safety of the product and that one could be seriously injured or killed without the horizontal brace in place.  (Killen depo., p. 73)

19.    There is a question as to whether the plaintiff was using the horizontal brace at the time of the accident.  The plaintiff has testified that he was using the horizontal brace at the time of the accident.  (Larry Stephens' depo., p. 89) However, there is physical evidence that suggests the plaintiff was not using the horizontal brace at the time of the accident. Specifically, the broken "clip end" of the horizontal brace is still on the first ladder rung of the second ladder section of the stand.  The upper ladder rails on the second ladder section are bent.  When one reassembles the stand today to achieve an inward deflection of the stand, the broken "clip end" of the horizontal brace faces in an outward direction.  In other

words, the brace would have faced away from the tree instead of towards the tree. (Thompson depo., p. 55, Killen depo., p. 73)

20.    Obviously, if the broken clip end of the horizontal brace faces out, this suggests that the horizontal brace was not being used at the time of the accident. (Thompson depo., p. 58, Killen depo., p. 73)

21.    Mr. Ken Killen, President of StrongBuilt, Inc., has testified that this product was reasonably safe when it was manufactured and sold.  (Killen depo., p. 74) In Mr. Killen's opinion, this product has been substantially modified, abused and misused since it was originally manufactured and sold.  (Killen depo., p. 74)

22.    It is undisputed that the horizontal brace is broken.  According to the plaintiffs' retained expert, Dr. Raymond Thompson, the horizontal brace broke due to "plastic deformity" as a result of repeated bending back and forth.  (Thompson depo., p. 161)

23.    The purpose of the horizontal brace is to support the ladder when being climbed by a hunter.  StrongBuilt warns its customers that the ladder stand can collapse without the horizontal brace in place.  (See StrongBuilt's written instructions.)

24.    StrongBuilt also warns its customers that the horizontal brace should be removed when the ladder stand is transported from one location to another. For example, the horizontal brace should be removed when the ladder stand is removed from the tree and stored during the off-season. (See StrongBuilt's written instructions.)

25.    Mr. David Stephens, the owner of the subject stand, testified that they did not remove the horizontal brace when transporting the stand from one location to another.  (David Stephens' depo., p. 91) This practice is contrary to StrongBuilt's written instructions.

26.    The plaintiffs' retained expert, Dr. Raymond Thompson, testified that it is a "bad practice" to leave the horizontal brace attached to the ladder when the ladder is transported from one location to another.  (Thompson depo., p. 92)

27.    The plaintiffs' retained expert, Dr. Raymond Thompson, is a metallurgist.  (Thompson depo., p. 162)   Dr. Thompson performed a number of calculations and concluded that with the horizontal brace in place, the subject ladder has sufficient strength and stability to withstand a 300 pound load which is the rated load for this stand.  (Thompson depo., p. 100) However, when the horizontal brace is not being used, Dr. Thompson's calculations reveal that the ladder will begin to bend and buckle with the application of a 300 pound load.  (Thompson depo., pp. 100-101)

28.    Dr. Thompson further testified that he is not aware of any national or association standards that would have applied to the subject stand when it was manufactured in the mid-1990's.  (Thompson depo., p. 37)

29.    Although Dr. Thompson has training and experience in metallurgy, he has no education, training or experience with hunting tree or ladder stands. Specifically, Dr. Thompson testified as follows with respect to his lack of expertise and experience with hunting stands:

A.    He has never designed any type of tree or ladder stand in his life. (Thompson depo., p. 28)

B.    He has never manufactured any type of tree or ladder stand in his life. (Thompson depo., p. 28)

C.    He has never worked for a company that has ever designed or manufactured any type of tree or ladder stand. (Thompson depo., p. 28)

D.    He has never consulted with a company that has ever designed or manufactured any type of tree or ladder stand. (Thompson depo., p. 28)

E.    He has never served as an expert witness in any other tree or ladder stand case. (Thompson depo., p. 26)

F.    He has never given a deposition or testified in court in any other tree or ladder stand case. (Thompson depo., pp. 22-25)

G.    He has never owned a hunting ladder or tree stand. (Thompson depo., p. 31)

H.    He has never done any testing on any hunting ladder or tree stand. (Thompson depo., p. 31)

I.    He is not a hunter and has never hunted out of a ladder or tree stand. (Thompson depo., p. 128)

J.    He has never attended any seminars on hunting safety or on tree or ladder stands. (Thompson depo., p. 128)

K.    He is not a "human factors expert."   (Thompson depo., p. 129)

L.    He is not a certified welder with respect to any joint design whatsoever.   (Thompson depo., p. 129)

M.    He has never done any welding on a ladder or tree stand and has never worked for a manufacturer of a tree or ladder stand with respect to weld design.   (Thompson depo., p. 131)

N.    He has "no clue" how these stands are assembled in the woods.  (Thompson depo., p. 142)

O.    He has not compared the StrongBuilt ladder stand with any other ladder stands for purposes of: (1) determining whether other manufacturers have manufactured a better or safer ladder stand, or (2) coming up with an alternative design for the subject product.   (Thompson depo., pp. 161-162 )

P.    He is not an expert in the field of hunting accident reconstruction.  (Thompson depo., p. 162)

Q.    He has not taken a substantially similar horizontal brace, connected it to a ladder rung, and determined how many cycles it would take to cause a failure.  (Thompson depo., pp. 163-164)

30.    As stated above, if one reassembles the subject stand today, it would appear that the plaintiff was not using the horizontal brace at the time of the accident.   (Thompson depo., pp. 55-58) However, Dr. Thompson was  told by counsel for the plaintiffs that the physical evidence was underlined altered since the time of the

accident.    (Thompson depo., pp. 61, 76)    According to statements made to Dr. Thompson by counsel for the plaintiffs, the stand had to be bent in the opposite direction to be disassembled.   (Thompson depo., p. 68)

31.    The stand was disassembled by Matt Stephens and Jaiton Stephens. Pursuant to a court order, these witnesses were redeposed on Monday, May 19, 2008 on the issue of the disassembly of the stand.  Matt and Jaiton Stephens both testified that the stand was carefully taken down and did not have to be bent or straightened to be disassembled.  (Matt Stephens depo. II, p. 40; Jaiton Stephens depo. II, p. 37)

32.    In fact, Jaiton Stephens testified that the ladder stand was in substantially the same condition when he removed it from the tree as it was when he turned over to one of the attorneys for the plaintiffs.  (Jaiton Stephens depo. II, pp. 45-49 )

33.    Mr. L. J. Smith is a hunting accident reconstruction expert.  (Smith depo., p. 53)  In Mr. Smith's opinion, the horizontal brace failed because the users of this stand did not follow the written instructions of the manufacturer.  Specifically, the users did not remove the horizontal brace when the stand was being transported from one location to another which allowed the horizontal brace to be repeatedly bent in several different directions.  In Mr. Smith's opinion, this is what caused the horizontal brace to fail.  (Smith depo., pp. 52-53)

34.    In Mr. Smith's opinion, the plaintiff contributed to cause the accident by failing to inspect the stand before he used it and by using a ladder stand that was

obviously modified and assembled incorrectly.  In addition, the plaintiff was using a ladder stand that had obviously not undergone any form preventative maintenance. (Smith depo., pp. 56-57)

35.    Mr. Ellis Sisk has been a certified welding inspector for the past 16 years. (Sisk depo., p. 15)  Mr. Sisk has inspected several hundred tree stands over the years including tree stands manufactured by StrongBuilt.  (Sisk depo., p. 16) In addition to inspecting tree stands for welding, Mr. Sisk has inspected and tested various tree stands for quality of workmanship, load testing, compliance with the Treestand Manufacturer's Association ("TMA") standards, and for proper written instructions and labeling.  (Sisk depo., pp. 17-18)

36.    In Mr. Sisk's opinion, this accident occurred as a direct result of improper assembly, improper use, unauthorized modifications, and lack of maintenance.  (Sisk depo., p. 33)

37.    In Mr. L. J. Smith's opinion, the subject product was reasonably safe, and properly designed and manufactured when it was manufactured by defendant StrongBuilt, Inc. in the mid-1990's. (See Smith report dated March 1, 2008)

38.    In Mr. Ellis Sisk's opinion, the factory welds were free of visible discontinuities, had a uniform profile and had adequate fusion. In addition, he found no obvious flaws in the design of the product or any visible defects in the original materials of manufacture. (See Ellis Sisk report)

**Legal Argument**

The plaintiffs have filed suit against defendant StrongBuilt, Inc. under the AEMLD (Count I), under theories of negligence and wantonness (Count II), for breach of express and/or implied warranties (Count III), and for loss of consortium (Count IV). The defendant respectfully submits that it is entitled to summary judgment with respect to each and every claim which will be addressed separately in this brief.

I.    Under Count I of the complaint, the plaintiffs allege that the defendant designed and manufactured a defective product and has brought suit under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").

In order to establish liability under the AEMLD: (1) a plaintiff must prove that he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate consumer, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition to which it was sold. (2) Having established the above elements, the plaintiff has proved a prima facie case although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer had not bought the product from or entered into any contractual relation with the seller. *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala. 1976), *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala. 1976), *Caudle v. Patridge*,

566 So.2d 244 (Ala. 1990), *Chase v. Kawasaki Motors Corp.*, 140 F.Supp.2d 1280 (M.D. Ala. 2001).

The law of Alabama is clear that the plaintiff must come forward with substantial evidence that the product in question is defective.  Mere proof of an accident with ensuing injuries is insufficient to establish AEMLD fault because "the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition." *Jordan v. General Motors Corp.*, 581 So.2d 835 (Ala. 1991).

In this case, defendant StrongBuilt, Inc. respectfully submits that it is entitled to summary judgment on the plaintiffs' AEMLD claim for multiple reasons.

First and foremost, the plaintiffs have failed, as a matter of law, to prove with competent expert testimony that the subject product was defective.  The plaintiffs have retained Dr. Raymond Thompson as an expert witness.  Dr. Thompson is a metallurgist.   While Dr. Thompson may be qualified to describe the type of metallurgical failure that occurred to the horizontal brace (i.e., plastic deformity as a result of repeated bending back and forth), he <u>is</u> <u>not</u> competent or qualified to express any opinions with regard to the design and manufacture of the subject ladder stand.

By Dr. Thompson's own admission, he has never manufactured or designed any type of hunting ladder stand.  Furthermore, he has never worked for or consulted with any company that has ever designed or manufactured any type of hunting ladder stand.  Moreover, he has never served as an expert witness, given any deposition or trial testimony in any other hunting ladder stand case.  Dr. Thompson

has never owned a hunting ladder stand and has never hunted out of a ladder stand.

Dr. Thompson testified that he has "no clue" how to assemble a hunting ladder stand

in the woods.  Dr. Thompson admitted that he is not a human factors expert and is

not a hunting accident reconstruction expert.  He has never attended any seminars

on hunting safety or accidents involving tree or ladder stands.  Dr. Thompson

admitted that he has never done any testing on any hunting ladder stands and has

done no testing on the subject product.  Furthermore, Dr. Thompson has not

compared the StrongBuilt ladder stand with any other ladder stands. Dr. Thompson

is not a certified welder or a certified welding inspector.

Suffice it to say, Dr. Raymond Thompson has no education, training,

experience, or expertise to express any opinions with respect to the design and

manufacture of this product.  Clearly, he is not competent and qualified to express

the opinion that the subject product is defective in any respect.

Dr. Raymond Thompson is the only named expert witness for the plaintiffs.

Because Dr. Thompson is not competent or qualified to express an opinion that the

subject product is defective, there is no evidence that the product is defective as

manufactured.  To the contrary, the substantial evidence in this case is that the

product did not violate any national standards and was reasonably safe when it was

originally designed and manufactured in the mid-1990's.

Secondly, this product had been substantially altered and modified after it was

manufactured and sold by StrongBuilt.  Without question, someone added a

homemade arm/gun rest to the top platform of the ladder stand and also performed

some additional welding on the stand. In addition, the stand was not assembled in accordance with the written instructions of StrongBuilt. There is no question that the product had been substantially changed since it was originally manufactured and sold in the mid-1990's. The expert witnesses for the defense (L. J. Smith and Ellis Sisk) have expressed the opinion that this accident occurred as a direct result of improper assembly of the product, improper use of the product, unauthorized alterations and modifications to the product, and lack of preventative maintenance.

Thirdly, the plaintiffs' failure to warn claim under the AEMLD is due to be dismissed because the undisputed evidence is that plaintiff Larry Stephens did not read and did not have someone read to him the written warnings and instructions that came with the subject product. The law of Alabama is crystal clear that a plaintiff who fails to read an allegedly inadequate warning cannot maintain a failure to warn claim. *Chase v. Kawasaki Motors Corp.*, supra; *E. R. Squibb & Sons, Inc. v. Cox*, 477 So.2d 963 (Ala. 1985). In addition, the plaintiffs retained expert, Dr. Raymond Thompson, offered no criticisms of the written instructions and warnings produced by StrongBuilt.

Because the plaintiffs have failed to produce substantial evidence that the StrongBuilt ladder stand was defective when it was originally designed and manufactured, because the subject product was clearly assembled incorrectly, modified and altered prior to the subject accident, and because the plaintiffs failed to read and follow the written instructions that came with the product, the defendant submits that it is entitled to a summary judgment under the AEMLD claim.

II.    Under Count II of the complaint, the plaintiffs have sued the defendant under theories of negligence and wantonness.

To succeed under a negligence claim, a plaintiff must prove (1) the existence of a legal duty to a foreseeable plaintiff, (2) a breach of that duty by the defendant, and (3) the defendant's breach of the legal duty proximately caused injuries and damages to the plaintiff. *Brushwitz v. Ezell*, 757 So.2d 423 (Ala. 2000).

To establish wantonness, the plaintiffs must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty that proximately caused injuries or damages to the plaintiff. *Brushwitz v. Ezell,* supra.

In this case, there is insufficient evidence to establish that StrongBuilt, Inc. was guilty of any negligence or wantonness which proximately caused the subject accident and injuries to Mr. Larry Stephens.  As stated above, the retained expert (Dr. Raymond Thompson) for the plaintiffs is not competent or qualified to express opinions with regard to the proper design and manufacture of a hunting ladder stand. Because the plaintiffs do not have competent expert testimony with respect to the proper design and manufacture of a ladder stand, there is simply no evidence that the defendant was guilty of any negligence or wantonness which caused or contributed to cause this accident.

To the contrary, the defendant has established that this product was reasonably safe as designed and manufactured.  Specifically, Mr. Ken Killen, President of StrongBuilt, Inc., has been designing and manufacturing ladder stands

since the 1980's.  In his opinion, the product involved in this litigation was reasonably safe as designed and manufactured.  In addition, the defendant has retained a hunting accident reconstruction expert, Mr. L. J. Smith, who has many years of experience with hunting stands and investigation of hunting accidents.  In addition, Mr. Smith is very familiar with the StrongBuilt products including the product involved in this lawsuit.  In Mr. Smith's opinion, this product was reasonably safe as designed and manufactured.  Finally, Mr. Ellis Sisk is a metallurgist and a certified welding inspector.  Mr. Sisk has inspected and tested many ladder stands over the years, including StrongBuilt ladder stands, for quality of workmanship, quality of welding, load testing, compliance with Treestand Manufacturer's Association standards, and sufficiency of written instructions and labeling.  In Mr. Sisk's opinion, this product was free of any visible defects in the original design and original materials of manufacture.  In his opinion, the accident occurred as a direct result of improper assembly, improper use, unauthorized modifications, and lack of maintenance.

Because the plaintiffs have failed to produce substantial evidence that the defendant is guilty of either negligence or wantonness, the defendant is entitled to a summary judgment with respect to those claims.

III.    Under Count III of the complaint, the plaintiffs have sued the defendant for breach of express and/or implied warranties that the treestand involved in this litigation was reasonably fit and suitable for the purposes for which it was intended.

To succeed under these claims, a plaintiff must offer proof of: (1) the existence of an express or implied warranty, (2) breach of that warranty, and (3) damages proximately resulting therefrom. *Chase v. Kawasaki Motors Corp.,* supra.

The defendant submits that it is entitled to summary judgment with respect to these claims because the plaintiffs have failed, as a matter of law, to prove by substantial evidence that the defendant breached any express or implied warranties.

First of all, the plaintiffs have not produced any evidence that the defendant made any express warranties with respect to the subject product. Secondly, with respect to the implied warranty claim, the defendant warned, in writing, the users of its product that the ladder stand could collapse if the horizontal brace was not installed and secure. StrongBuilt's written instructions clearly warned the user of this product that serious bodily injury or death could occur without the horizontal brace in place. Thirdly, the undisputed evidence is that with the horizontal brace in place, the subject product has sufficient strength and stability to withstand its rated load of 300 pounds.

Simply put, there is no evidence that the defendant breached any express or implied warranties with respect to the subject product. Therefore, the defendant is entitled to summary judgment with respect to those claims.

IV.    In Count IV of the complaint, Deborah Stephens has asserted a claim for loss of consortium. Her claim is derivative of her husband's claim. Because the defendant is entitled to summary judgment with respect to the claims of Larry Stephens, it is also entitled to summary judgment with respect to the claim of

Deborah Stephens. *Weekly v. State Farm Mut. Auto. Ins. Co.,* 537 So.2d 477 (Ala. 1989).

## Conclusion

Based upon the undisputed material facts and the applicable law, the defendant respectfully requests this Honorable Court to enter a final summary judgment in its favor.

/s/ David Lee
David A. Lee (LEE019)
ASB-3165-E47D
Attorney for Defendant

OF COUNSEL:
PARSONS, LEE & JULIANO, P.C.
300 Protective Center
2801 Highway 280 South
P. O. Box 530630 (35253-0630)
Birmingham, AL 35223-2480
(205) 326-6600

## CERTIFICATE OF SERVICE

I hereby certify that I have served on this the 30th day of May, 2008, a copy of the foregoing pleading via United States mail, postage prepaid and properly addressed on counsel for all parties as follows:

Dennis R. Weaver, Esq.
William H. Hassinger, Esq.
Weaver Tidmore, LLC
200 Cahaba Park Circle, Suite 214
Birmingham, Alabama 35242

/s/ David A. Lee
OF COUNSEL