IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY STEPHENS and DEBORA STEPHENS, </br></br>Plaintiffs,</br></br>v.</br></br>STRONG BUILT, INC.;</br></br>Defendants. | )))))))))))))) Civil Action No.: 2:07CV128-10 |

**PLAINTIFFS' MEMORANDUM BRIEF IN OPPOSITION TO DEFENDANT STRONGBUILT, INC.'S MOTION TO PRECLUDE CERTAIN OPINIONS OF PLAINTIFFS' EXPERT WITNESS FOR FAILURE TO SATISFY THE _DAUBERT_ STANDARD**

**I.     ADMISSIBILITY OF EXPERT TESTIMONY**

Plaintiff's expert has satisfied the standards under the Federal Rules of Evidence for the admission of his testimony. In _Daubert v. Merrell Dow Pharmaceuticals, Inc._, 113 S.Ct. 2786 (1993), the Supreme court held that the adoption of the _Federal Rules of Evidence,_ and in particular Rule 702, overruled the longstanding test of admissibility espoused in _Frye v. United States,_ 293 F 1013 (DC Cir. 1923). Rule 702 states : "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified

as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Under this approach and the general rule of liberal inclusion of the *Federal Rules of Evidence,* the trial judge holds extreme power as to admissibility of expert testimony.

The *Frye* rule was a rigid test which required a showing of "general acceptance." In *Daubert,* the Supreme Court held: "Nothing in the text of this Rule [702] establishes 'general acceptance' as an absolute prerequisite to admissibility. Nor does respondent present any clear indication that Rule 702 or the Rules as a whole were intended to incorporate a 'general acceptance' standard. The drafting history makes no mention of *Frye,* and a rigid 'general acceptance' requirement would be at odds with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to "opinion testimony." 113 S.Ct. at 2794 (citations omitted). Instead, *Daubert* requires a trial judge to ensure that the proffered expert testimony be relevant and reliable. *Id.* At 2795. Under this two-part test, expert testimony should be much more freely admitted.

The reliability portion of this test is much less stringent than the *Frye* rule was. The Court states: "It would be unreasonable to conclude that the subject of scientific testimony must be 'known to a certainty; arguably there are no certainties in science." *Daubert* at 2795. Furthermore, a party presenting expert scientific testimony need not establish that the

methodology used by the expert is the best methodology available or the expert methodology is flawless. Rather, *Daubert* merely directs the trial judge to conduct "a preliminary assessment of whether the reasoning or methodology properly can be applied to the facts at issue." 113 S.Ct. 2796. Stated another way, the trial judge must ensure that the testimony "rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." *Id.* at 2799. The testimony of Plaintiffs' expert in this case easily meets and exceeds this standard.

The Supreme Court noted one overriding instruction for the analysis of expert testimony: "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 2797. This policy clearly delineates the separation of the roles of judge and jury. Instead of judges keeping evidence out, it is the jury's role to determine the weight and credibility that should be assigned to the testimony. *Browder v. General Motors Corp.*, 5 F.Supp.2nd 1267, 1281 (M.D. Ala. 1998). "This does not mean that the plaintiffs have to prove their case twice- they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they have only to demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3rd Cir. 1994).

In *Daubert,* the Supreme Court set forth four pertinent factors to be addressed in determining whether the underlying reasoning or methodology is scientifically valid, but made clear that this list is not definitive. "Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test." 113 S.Ct. 2796. The first factor which the Court addressed is whether the theory or technique can be or has been tested. *Id.* The second factor is dependant upon the theory or technique being subjected to peer review. Third, the court addressing admissibility can look at the known or potential rate of failure for the technique. The fourth and final factor which may bear on inquiry is whether the technique is generally accepted. 113 S.Ct. at 2797.

The Court emphasized that the inquiry of Rule 702 is a flexible one. The Court also embraces the Rules inherent in the Federal Rules liberal scope of inclusion by stating: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 113 S.Ct. 2798. This statement once again emphasizes the important distinction between judge and jury. The jury should be allowed every opportunity to hear relevant evidence and make its own determination as to its substance and believability.

The Supreme Court has revisited the issue of expert testimony several times since *Daubert*, clarifying several lingering questions. In *General Electric Co. v. Joiner*, 118 S.Ct. 512 (1997), the Court acknowledged that the *Federal Rules of Evidence* allow district courts to admit a broader range of scientific testimony than allowable under *Frye*. 118 S.Ct. at 517. Furthermore, the Court held that the proper standard of review defers to the district court's discretion. *Id.* at 519.

The Supreme Court's next step was to extend the holding of *Daubert* to expert witnesses whose testimony was not scientific in nature. *Kumho Tire Co., Ltd. V. Carmichael,* 119 S.Ct. 1167 (1999). Specifically, the Court held that the Daubert test applied to testimony based not only on scientific knowledge, but that which is based on technical and other specialized knowledge. *Id.* The Court also reiterated that while the district court may consider one or more of the factors listed in *Daubert*, the test is a flexible one that "neither necessarily nor exclusively applies to all experts or in every case." *Id.* "The conclusion, in our view, is that we can neither rule our, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert,* nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular case at issue." The list of factors "was meant to be helpful, not definitive." *Id.* at 1175.

The Eleventh Circuit has addressed the issue of the admissibility of expert testimony since *Daubert* and its progeny. That court has set forth its version of the *Daubert* standard as a three prong test for admissibility: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact at issue." *City of Tuscaloosa v. Harcos Chemicals, Inc.* 158 F.3d 548,562 (11th Cir. 1998).

The court went on to emphasize the purpose of expert testimony: "As expert testimony, the testimony need only assist the trier of fact, through the application of scientific, technical, or specialized expertise to understand the evidence or to determine a fact in issue. As circumstantial evidence, McClave's data and testimony need not prove the plaintiff's case by themselves; they must merely constitute one piece of the puzzle that the plaintiffs endeavor to assemble before the jury." 158 F.3d at 565.

This test once again illustrates that denial of this type of evidence will not be very common. Instead, this is a very generous door to admissibility. The Eleventh Circuit in this case recognizes the obvious truth that very rarely will any study definitively prove an issue. Therefore, this cannot be

the test for admissibility. Instead, the basis for the study must be reliable, and the results need only be useful to the jury's understanding or determination of the case. The jury can then, after admission, determine itself what weight, if any, to give to the evidence.

Furthermore, it has been commonly held that just because the facts underlying the opinion of an expert are in dispute, the expert's testimony should not be excluded. "Where the expert's testimony has a reasonable factual basis, a court should not exclude it. Rather it is for opposing counsel to inquire into the expert's factual basis." *U.S. v. 1.161 Acres of Land in Birmingham, Alabama,* 837. F.2d 1036, 1040 (11th Cir. 1988). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Ludermill v. Dow Chemical Co.,* 863 F.2d 566, 570 (8th Cir. 1988).

## II. PARTIAL STATEMENT OF QUALIFICATIONS OF PLAINTIFFS' EXPERT, DR. RAYMOND THOMPSON

- Dr. Thompson is qualified by education in engineering design, engineering mechanics, failure analysis, materials specifications, materials analysis and material testing. He received a BSE in engineering in 1974 and a MSE in materials engineering in 1975

from UAB. He received a Ph.D. in materials science and engineering from Vanderbilt University in 1979. (Technical Resume, Plaintiffs' Exhibit 16).

- Dr. Thompson is a registered engineer in Alabama, Arkansas and South Carolina and is a Fellow and member in good standing with the American Society of Materials and American Welding Society. (Technical Resume, Plaintiffs' Exhibit 16).

- Dr. Thompson taught in the Ceramics Engineering Department at Clemson University from 1978-1981 and taught at UAB in the Department of Materials Engineering from 1981-2002. While in these positions he taught undergraduate and graduate level courses in engineering design, fracture mechanics, strength of materials, materials testing, and manufacturing practice. (Technical Resume, Plaintiffs' Exhibit 16).

- In Dr. Thompson's private professional practice, he has acted as a consultant for industry in the selection and use of metals, the fabrication of products and the processing of materials. He continues to be active in research through contracts with the Department of Defense and the National Science Foundations. (Technical Resume, Plaintiffs' Exhibit 16).

- Failure Analysis Committee, Member, ASM International. (Technical Resume, Plainiffs' Exhibit 16).

- Joining Division Council, Metals and Ceramics Committee, 1985-1987. (Technical Resume, Plaintiffs' Exhibit 16).

- Welding Research Council (various positions), 1985-1990. (Technical Resume, Plaintiffs' Exhibit 16).

- Technical Referee, Metallurgical Transactions. (Technical Resume, Plaintiffs' Exhibit 16).

- Technical Referee, Welding Journal Research Suppl. (Technical Resume, Plaintiffs' Exhibit 16).

- Fellow, American Welding Society, 2005. (Technical Resume, Plaintiffs' Exhibit 16).

- Fellow, American Society of Materials, 2004. (Technical Resume, Plaintiffs' Exhibit 16).

- Dr. Thompson developed and taught courses in welding metallurgy, weld processing and nondestructive testing while at UAB. These courses were taught as advanced undergraduate and graduate electives in the Materials Engineering Department. (Technical Resume, Plaintiffs' Exhibit 16)

- Some relevant publications include: "Mathmatics of Microstructure Evolution," and "The Effect of Weld HAZ Liquation Kinetics on Liquation Cracking Susceptibility of Alloy 718." (Technical Resume, Plaintiffs' Exhibit 16)

- Some relevant presentations include: "Critical Care Ground Safety-What You Should Know," "Failure Analysis," "Spot Weld Failure in Galvanized Steel Sheets," and "Fatigue Failure in a Threaded Eyebolt." (Technical Resume, Plaintiffs' Exhibit 16).

An exhaustive list of qualifications and publications pertaining to Dr. Thompson's expert opinion are contained in his resume, attached as Defendant's Exhibit 1 to Dr. Thompson's deposition. The preceding list barely scratches the surface as to Dr. Thompson's ability to testify competently as to welding design and failure.

## III. THE TESTIMONY OF DR. THOMPSON RELATING TO DESIGN, DEFECTIVENESS, AND FORESEEABLE MISUSES FULFILLS BOTH *DAUBERT* AND *CITY OF TUSCALOOSA* STANDARDS, AND IS THEREFORE ADMISSIBLE.

Defendant Strongbuilt, Inc. takes no exception to Dr. Thompson's testimony that the horizontal brace on the subject product broke due to "plastic deformity." Defendant, does, however, seek to preclude Dr. Thompson from criticizing the horizontal brace and "weld shape" of the

factory welds on the subject product, as well as foreseeable misuses of the subject product. (Thompson Depo., pp. 158-159, 183, 187) The assertion that Dr. Thompson is not qualified to be critical of this design is simply an incorrect conclusion of law. Strongbuilt relies primarily on Dr. Thompson not being a hunter, not having experience in hunting accident reconstruction, and not consulting with any company that has designed or manufactured any type of hunting ladder stand. It would seem the only acceptable expert to the Defendant would be an avid hunter who is well versed in accident reconstruction, who has previously consulted with tree stand manufacturers, and earned his post-graduate engineering degree while putting himself through school by being a certified welder/human factors expert. Plaintiffs are thankful the *Daubert* standard is not so lofty.

Dr. Thompson testifies, in relevant part:

> A. The difference between using square tubing and crimp tubing comes in what mechanics is called the second moment of the area or the moment of inertia. So when you crimp that tube, you lose the moment of inertia that you have in the square tubing. And it's basically a factor of decrease in the strength of the tube. If you keep it all square tubing, appropriately sized, then your stability is quite a bit larger.

(Depo. of Thompson pp.174-175)

In layman's terms, it is Dr. Thompson's testimony that square tubing, rather than crimped tubing used in the subject product, would have increased

stability. Defendant Strongbuilt takes exception to this testimony, stating that Dr. Thompson has no experience in the manufacture or design of ladder stands. Of superseding relevance is that Dr. Thompson is an engineer with decades of experience in metallurgy, and is qualified to perform calculations on the stand that would determine stability. The calculations performed are attached to Dr. Thompson's deposition as Plaintiffs' Exhibit 10. The methodology for the calculations is in part derived from the Steel Tube Institute of America, in part from *Mechanical Engineering Design* (Sixth Edition), in part from the *Structural Welding Code* of the American Welding Society, as well as the *Standard Test Method for Tree Stand Repetitive Loading Capablilty*. (Plaintiffs' Exhibits 11-15). All learned treatises or industry standards, all with which Dr. Thompson has a litany of experience, and all relevant to the *Daubert* and *City of Tuscaloosa* standards of expert methodology.

Defendant Strongbuilt also addresses Dr. Thompson's opinion that it should have been foreseeable to the manufacturer of the ladder stand that the stand's design would subject it to certain types of stresses. As a basis for contesting the admissibility of this testimony, Strongbuilt states that Dr. Thompson "has not researched the habits of hunter's (sic) in the woods. He has not studied the statistics from other hunting ladder stand accidents. He is not a human factors expert." (Strongbuilt's Motion to Preclude) None

of the preceding contentions, individually or collectively, are a basis for inadmissibility. Dr. Thompson does not have to study statistics on hunter safety to perform calculations as to defining the weakest point of the stand from a design perspective. In the instant case, hunter safety is irrelevant, because plaintiff Larry Stephens is an experienced hunter who in no way contributed to his accident. Additionally, Strongbuilt continually refers to plaintiff's "misuse" of the stand. Although a corollary matter, better reserved for Plaintiffs' Response to Defendant's Motion for Summary Judgment, Strongbuilt's characterization of "misuse" is somewhat disingenuous. An after-market shooting rail was added to the tree stand (but not by Plaintiffs), and is a commonplace accessory that had no bearing on the failure of the ladder stand. In addition, it is highly disputed that this stand was ever "misused" in any capacity. The surface rust present on the ladder stand is a common characteristic of any such product that is exposed to elements of nature in the course of normal use.

## IV. CONCLUSION

As previously stated, The Eleventh Circuit's decision in *City of Tuscaloosa* sets forth the following requirements for admissibility of expert testimony: competence, accepted methodology, and assistance to the trier of fact. *City of Tuscaloosa v. Harcos Chemicals, Inc.* 158 F.3d 548,562 (11th Cir. 1998). Plaintiffs submit Dr. Raymond Thompson's litany of

qualifications as to metallurgy, engineering, and weld design with this memorandum brief. (Technical Resume, Plaintiffs' Exhibit 16) Plaintiffs submit both Dr. Thompson's testimony upon examination by Strongbuilt as to calculations performed on subject tree stand, as well as learned treatises and industry standards relied upon by Dr. Thompson in analyzing and criticizing the subject ladder stand. (Depo. Thompson, Plaintiffs' Exhibit 8, 10-16). Finally, Plaintiffs submit that the expert testimony by Dr. Thompson as to the subject ladder stand would be greatly beneficial to the trier of fact in this case. The trier of fact should not be denied the opportunity to hear testimony from a metallurgist and engineer as to the weakest point of design, the mechanism of failure, and defectiveness from a metallurgical standpoint.

WHEREFORE, PREMISES CONSIDERED, the plaintiffs, Larry and Debora Stephens, respectfully request this Honorable Court to enter an order unilaterally denying defendant StrongBuilt, Inc.'s Motion to Preclude Certain Opinions of Dr. Raymond Thompson.


/s/ Dennis R. Weaver

---
DENNIS R. WEAVER (ASB-1287-V51D)

**OF COUNSEL:**
WEAVER TIDMORE, LLC
200 Cahaba Park Circle, Suite 214
Birmingham, Alabama 35242
Phone: 205-980-6065
Fax: 205-980-6165
E-mail: rweaver@weavertidmorelaw.com

## CERTIFICATE OF SERVICE

I, do hereby certify that I have this 5th day of May, 2008, served a true and correct copy of the foregoing by U.S. Mail, postage prepaid and by electronically filing the same through the CM/ECF system to:

David A. Lee, Esq.
Parsons, Lee & Juliano, PC
2801 Highway 280 South
300 Protective Center
Post Office Box 530630
Birmingham, Alabama 35223-2480
(205) 326-6600

/s/ Dennis R. Weaver
_____
OF COUNSEL