IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY STEPHENS and DEBORA STEPHENS,<br><br>   Plaintiffs,<br><br>v.<br><br>STRONG BUILT, INC.;<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.: 2:07CV128-10 |

## PLAINTIFFS' MEMORANDUM BRIEF IN OPPOSITION TO DEFENDANT STRONGBUILT, INC.'S MOTION FOR SUMMARY JUDGMENT

### STANDARD OF REVIEW

The trial court must render summary judgment for the moving party forthwith if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. R. 56(c), F. R. Civ. P.; see also, Adams v. Auto-Owners Ins. Co., 655 So.2d 969, 970 (Ala 1995); Jackson v. USX Corp., 659 So.2d 21, 22 (Ala. 1994). In determining a motion for summary judgment, a court is bound to view the evidence in a light most favorable to the non-moving party. Thetford v. City of Clanton, 605 So.2d 835, 838 (Ala. 1992).

## **STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. The accident that made the basis of this claim occurred on December 2, 2006 in Elmore County, Alabama. (See Complaint)

2. At the time of the accident, Plaintiff Larry Stephens was using a BLS-15 (Basic Ladder Stand, fifteen feet), manufactured by defendant StrongBuilt, Inc. These ladder stands are used in the course of hunting wild game. (Killen depo., p. 17)

3. Plaintiff did not own the ladder stand that made the basis of this lawsuit. (Larry Stephens depo., p.37)

4. Plaintiff's uncle, Terry Stephens, claims to have purchased this product from a Wal-Mart in 2004, and subsequently gave the stand as a Christmas gift. (Terry Stephens depo.)

5. Regardless of time and place of purchase, Mr. Kenneth Killen, owner of StrongBuilt, Inc., has identified subject treestand as manufactured by his company. (Killen depo., p. 38)

6. Mr. Killen is not a certified welder. Further, he is uncertain if certified welders were used in the fabrication of subject product. No engineers were retained for consulting purposes in Mr. Killen's design of the subject product. Mr. Killen does not have a college degree. (Killen depo., pp. 8,1718,19).

7. David and Matt Stephens, cousins of the Plaintiff, assembled the ladder stand, using the instructions that came with the ladder stand. (David Stephens depo., p. 100).

8. It is undisputed that the subject ladder stand had been altered at some time between the date of manufacture and the date of the accident. (Killen depo., p. 74). It is also undisputed that this alteration was in the form of an added shooting rail added to the top of the stand. (Killen depo., p. 48). Plaintiff's expert has testified that this added rail had no bearing on the collapse of the subject ladder stand. (Thompson depo., p. 175)

9. The accident occurred at approximately 5:45 a.m. on December 2, 2006. Plaintiff Larry Stephens was climbing the subject ladder stand, and had not yet entered the platform, when the ladder stand collapsed inward towards the tree. As a result of the collapse, Plaintiff fell approximately fifteen feet to the ground, shattering both legs. The ladder collapsed inward because the brace connecting the ladder to the tree failed, and without adequate bracing, the ladder buckled. (Larry Stephens depo., pp. 89-91, 101)

10. Plaintiff Larry Stephens is an experienced hunter, who had used this subject ladder stand on previous occasions, with the brace in

place, with no difficulty. It is undisputed that the horizontal brace (the brace that failed), is important to the safety and stability of the subject product. It is the support brace that connects the ladder to the tree. (Killen depo. p. 73).

11. Photographs were taken of the subject product still assembled, but collapsed, subsequent to the accident. The photographer, Dwight Jones, has testified that the horizontal brace was found on the ground between the ladder and the tree. Upon inquiry by StrongBuilt, he further testified that the broken "clip end" of the horizontal brace was facing *towards the tree* when photographed. This is supported by his photograph of the broken clip, attached as part of the deposition of Dwight Jones. Despite an allegation that the brace may not have been in use, this is contra to the undisputed physical evidence of the photograph, testimony of Dwight Jones, testimony of Jaiton Stephens (who was present at the time of the photographs, and saw the horizontal brace between the ladder and the tree), and the methods an experienced hunter would have used on the day of the accident. Moreover, it is undisputed that Plaintiff has testified the brace was in place, that the location of the brace found by Dwight Jones and Jaiton Stephens is consistent with where the brace would have

fallen upon breaking, that Dwight Jones has testified the "clip end" was facing towards the tree, not outward, and that the photographs taken by Dwight Jones support this conclusion. (Depo. Larry Stephens, p. 89; Jones Depo., pp. 36,53 ; Jaiton Stephens p.16,17).

12. Defendant's expert in hunting accident reconstruction, L.J. Smith, has given approximately 43 depositions in tree stand cases. All 43 times testifying on behalf of the defendant, never for the plaintiff. In fact, Mr. Smith has never declined the opportunity to work for a defendant tree stand company, before or after examining the subject product. (Depo. of Smith, pp. 12, 22-25)

13. Defendant's expert L.J. Smith has no formal education as to metallurgy, physics, or engineering. (Depo. of Smith p. 13).

14. Defendant's expert, L.J. Smith, states that in his opinion, replacement bolts as to the subject product's platform had nothing to do with the accident. Mr. Smith does not believe the assembly of angle braces were related to this accident. (Depo. of Smith, p. 47, 55).

15. Defendant's expert, L.J. Smith believes that the weld metal failed as a result of fatigue from being carried in and out of the woods without being detached. As to fatigue being a specific mechanism

of failure relating to welds, Mr. Smith cannot provide a definition of "fatigue" and has run no calculations and does not know how to perform such calculations. Yet without the benefit of performing any calculations, without being a certified welder, and despite inability to define "fatigue," Mr. Smith is resolute in his opinion that fatigue from carrying the stand in and out of the woods without detaching the brace caused the ultimate failure of the subject brace. (Depo. of Smith, pp. 50, 51)

16. Defendant StrongBuilt's welding expert, Mr. Ellis Sisk, admits that it is possible that there could be an obvious flaw in design, but that a tree stand could still meet the minimum industry standard. (Depo. of Sisk, p. 27).

17. Mr. Sisk performed no tests on the subject product, including a load bearing test or x-ray of the welds to determine a "fusion line." Additionally, he is not a licensed professional engineer. (Depo. of Sisk, p. 34,39).

18. Mr. Sisk hesitates to testify that the failure of the brace is fatigue related, but rather is high stress/low cycle, contra to the testimony of defendant's other expert, Mr. L.J. Smith.    (Depo. of Sisk p. 31)

19. Plaintiff's expert, Dr. Raymond Thompson, received a Ph. D. in engineering in 1979 from Vanderbilt University. Subsequently, he assumed teaching positions at Clemson University (ceramic engineering) and UAB (material science and engineering). He has taught many aspects of metallurgy, failure analysis, and design. Relative to this litigation, Dr. Thompson has taught welding metallurgy, weld processing, and nondestructive testing at the undergraduate and graduate levels at UAB. (Technical Resume of Dr. Thompson, Plaintiffs' Exhibit 16).

20. It is the opinion of Dr. Thompson that the ladder stand failed due to the breakage of the lower brace that acts to prevent the inward deflection of the ladder. The failure of the lower brace, coupled with the questionable design of the X geometry of the male connection on the side rail caused the ladder to bend and buckle well below its designed load limit. Further, it is his opinion that that the failure was facilitated by defective welds between the brace and its bracket that attaches to the ladder rung. (Expert Report of Dr. Thompson, Plaintiffs' Exhibit 9)  Dr. Thompson has provided calculations by which he arrived at this conclusion. (Plaintiffs' Exhibit 10)

## Legal Argument

Plaintiffs seek recovery against defendant StrongBuilt, Inc. under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") (Count I), negligence and wantonness (Count II), breach of express and/or implied warranties (Count III), and loss of consortium (Count IV). Defendant is not entitled to summary judgment on any of these grounds, all of which will be addressed independently in this brief.

I. In order to establish liability under the AEMLD, plaintiff must: (1) prove that he suffered injury or damages to himself or his property by one who sold a product in defective condition unreasonably dangerous to the plaintiff as the ultimate consumer, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition which it was sold. (2) Having established the above elements, the plaintiff has proved a prima facie case even if (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer had not bought the product from or entered into any contractual relation with the seller. *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala. 1976), *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala. 1976), *Caudle*

v. *Patridge* 566 So.2d 244 (Ala. 1990), *Chase v. Kawasaki Motors Corp.*, 140 F.Supp.2d 1280 (M.D. Ala. 2001).

Defendant StrongBuilt first alleges the plaintiffs have failed, as a matter of law, "to prove with competent expert testimony that the subject product was defective." This argument is meritless. First, StrongBuilt incorrectly states the standard of review to which the trial court must adhere. The trial court must render summary judgment for the moving party forthwith if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. R. 56(c), F. R. Civ. P.; see also, Adams v. Auto-Owners Ins. Co., 655 So.2d 969, 970 (Ala 1995); Jackson v. USX Corp., 659 So.2d 21, 22 (Ala. 1994). Thus, to survive a Motion for Summary Judgment, the non-moving party need only show genuine issues of material fact. *Id.*

As to the assertion that Dr. Thompson is not qualified to testify as to defectiveness of the subject product, this argument is equally meritless. Dr. Thompson testifies, in relevant part:

> A. The difference between using square tubing and crimp tubing comes in what mechanics is called the second moment of the area or the moment of inertia. So when you crimp that tube, you lose the moment of inertia that you have in the square tubing. And it's basically a factor of decrease in the strength of the tube. If you keep it all square tubing, appropriately sized, then your stability is quite a bit larger.

>   (Depo. of Thompson pp.174-175)
>
>   Q. Poor design in what perspective?
>
>   A. Poor design in respect to the amount of load it takes to deform the tube at the weld relative to the type of device that it is, long lever arm on the end of a welding tube.
>
>   (Depo. of Thompson, p. 187)

In layman's terms, it is Dr. Thompson's testimony that square tubing, rather than crimped tubing used in the subject product, would have increased stability. Additionally, Dr. Thompson states the design is poor relative to the load it takes to deform the tube, due to the weld shape. Defendant Strongbuilt takes exception to this testimony, stating that Dr. Thompson has no experience in the manufacture or design of ladder stands. Of superseding relevance is that Dr. Thompson is an engineer with decades of experience in metallurgy, and is qualified to perform the calculations on the stand that would determine stability. The calculations performed are attached to Dr. Thompson's deposition as Defendant's Exhibit 1. The methodology for the calculations is in part derived from the Steel Tube Institute of America, in part from *Mechanical Engineering Design* (Sixth Edition), and in part from the *Structural Welding Code* of the American Welding Society. All learned treatises or industry standards, all with which Dr. Thompson has a litany of experience, including instruction of weld

design at the graduate level. It is Dr. Thompson's opinion this product was defective, and despite the otherwise assertion by StrongBuilt, he is well-qualified to render this opinion.

As to StrongBuilt's assertion that the product had been substantially altered and modified, plaintiffs do not dispute that the subject ladder stand was modified for "shooting rails." However, plaintiffs highly dispute that the alteration was "substantial." An added shooting rail played no part in the failure of the subject tree stand. (Depo. of Thompson, p.175). This accident occurred when plaintiff Larry Stephens was near the top of ladder. It was not as if Larry Stephens gripped the shooting rail for support, and that change in load dynamic caused the failure of the ladder stand. In fact, expert L.J. Smith admits that assembly of the platform and angle braces likely played no part in the ladder stand's failure. (Depo. of Smith p. 47).

The plaintiffs have produced substantial evidence that the StrongBuilt ladder stand was defective when it was originally designed and manufactured, via analysis of plaintiffs' expert, Dr. Raymond Thompson. The modifications were not substantial, and played no part in the failure of the ladder stand. Therefore, the plaintiffs submit that the defendant is not entitled to summary judgment under the AEMLD claim.

II. Under Count II of the complaint, plaintiffs have brought suit under the theories of negligence and wantonness.

To succeed under a negligence claim, a plaintiff must prove (1) the existence of a legal duty to a foreseeable plaintiff, (2) a breach of that duty by the defendant, and (3) the defendant's breach of the legal duty proximately caused injuries and damages to the plaintiff. *Brushwitz v. Ezell* 757 So.2d 423 (Ala. 2000).

StrongBuilt responds to the negligence and wantonness claim by asserting that Dr. Raymond Thompson is not qualified to testify to proper design and manufacture of the subject products. Plaintiffs have addressed this issue repeatedly, in both this memorandum brief and the memorandum brief in response to defendant's *Daubert* motion, filed simultaneously. Plaintiffs will not burden the court by again re-hashing the qualifications of Dr. Thompson, suffice it to say that a professor who taught welding design at the graduate level and possessing a Ph. D. in engineering and materials science is, in fact qualified to submit such testimony. The industry standards, learned treatises, and calculations performed by Dr. Thompson were admitted via the deposition of Dr. Thompson, and are all attached to this memorandum brief as evidentiary submissions. These include: *Structural Welding Code- Steel* (Tenth Edition), *Hollow Structural Sections, Dimensions and Section Properties* (including, in relevant part "Standard Test Method for Treestand Repetitive Loading Capability," and "Standard Test Method for Treestand Static Load Capacity,") the voluntary standards

of hunting tree stands by the US Consumer Product Safety Commission, and a thirteen-page technical resume detailing appointments, awards, grants, and over 50 publications in the field of materials science and engineering. (Technical Resume, Plaintiffs' Exhibit 16). It is his opinion that failure of the brace was facilitated by defective welds between the brace and its bracket. Dr. Thompson also analyzes the design flaw of the X geometry of the side rail, and is qualified to do so. (Depo. of Thompson, pp. 174-175; Expert Report of Dr. Thompson, Plaintiffs' Exhibit 9).

Defendant StrongBuilt relies in part on the testimony of the owner and president, Mr. Ken Killen. Mr. Killen has stated that, in his opinion, the subject product involved in this litigation was reasonably safe as designed and manufactured. Mr. Killen is not a certified welder, is not an engineer, and does not possess a college degree. He testified, in relevant part:

> Q. But as we sit here today, you don't have any documents or product specifications for the tree stand that made the basis of that litigation – for this litigation or the current tree stands that you have?
>
> A. No.
>
> Q. And you don't have any specification- you don't have a weld design, you don't have a weld specification?
>
> A. No.
>
> (Depo. of Killen, p. 36)

Mr. Killen was a farmer until he began StrongBuilt in the mid-1980's. (Depo. of Killen, p. 8). Despite his lack of qualification for ladder stand design, Mr. Killen did not engage the services of an engineer to assist him, and designed the stand for the convenience of UPS shipping and cost efficiency. (Depo. of Killen, pp. 16-18). After Mr. Killen designed the subject product, he assigned the labor to "contract welders" in his fabrication shop. He is uncertain if certified welders were used, but is certain that no weld design was provided. (Depo. of Killen, p. 21) Plaintiffs contend that Mr. Killen was wholly unqualified to design the subject product, did not retain any engineers for the purpose of consulting and fabricating the subject product, and did not use certified welders to fabricate the subject product. Plaintiffs further contend that submitting this questionable design and manufacture into the stream of commerce was recklessly indifferent, and that this ultimately and proximately caused injuries and damages to the plaintiffs. Alternatively, plaintiffs submit that this conduct as to design and manufacture was, at the very least, negligent. Defendant StrongBuilt breached the duty to a foreseeable plaintiff by placing an unsafe product into the stream of commerce, and the failure of the subject product proximately caused plaintiff Larry Stephens to have multiple bilateral fractures to his femur, tibia, and fibula. Thus, the

plaintiffs have produced substantial evidence via deposition testimony and analysis of the subject product that the defendant is guilty of both negligence and wantonness, and defendant is not entitled to summary judgment with respect to either claim.

III.   Under Count III of the complaint, plaintiffs seek recovery for breach of express and/or implied warranties. Specifically, plaintiffs assert the ladder stand involved in this litigation was not reasonably fit and suitable for the purposes for which it was intended. To succeed under these claims, plaintiffs must offer proof of (1) the existence of an express or implied warranty, (2) breach of that warranty, and (3) damages proximately resulting from said breach. *Chase v. Kawasaki Motors Corp.*, supra.

With respect to the implied warranty claim, StrongBuilt asserts "the defendant warned, in writing, the users of its product that the ladder stand could collapse if the horizontal brace was not installed and secure." Defendant further elaborates, "StrongBuilt's written instructions clearly warned the user that serious injury or death could occur without the horizontal brace in place." (Def. Memorandum Brief in Support of MSJ, p. 18). In the instant case, these warnings are irrelevant. It is the testimony of the plaintiff that the horizontal brace was in place. It is the testimony of Jaiton Stephens and Dwight Jones that the brace was found in between the ladder and the tree, and it is the testimony of Dwight Jones that the broken

"clip end" was facing towards the tree when photographed. (Depo. of Jaiton Stephens, pp. 16,17; Depo. of Dwight Jones, pp.36,53) Despite the horizontal brace being secured, the ladder stand failed. Simply put, defendant StrongBuilt breached the implied warranty to a foreseeable plaintiff by placing an unsafe product into the stream of commerce. There is substantial evidence of negligent and/or wanton design and manufacture via testimony and analysis of Dr. Raymond Thompson, as well as Mr. Ken Killen.

With respect to Mr. Killen, his design of the product without engineering consultation or certified welder manufacture proximately caused the bilateral tibia, fibula, and femur fractures to plaintiff Larry Stephens. Plaintiff Larry Stephens, as a foreseeable plaintiff, had a right to rely upon the implied warranty of the subject product. Simply put, the subject product failed, the implied warranty was breached, and plaintiffs have suffered physical and mental damages as a result. Therefore, defendant StrongBuilt is not entitled to summary judgment with respect to these claims.

    IV.   In Count IV of the complaint, plaintiff Debora Stephens asserts a claim for loss of consortium. It is undisputed that this claim is a derivative of her husband's claim. *Weekly v. State Farm Mut. Auto. Ins. Co.*, 537 So.2d 477 (Ala. 1989). Because defendant StrongBuilt is not entitled to

summary judgment with respect to any claims brought forth by Larry Stephens, there is no basis for granting StrongBuilt summary judgment with respect to any derivative claim of a co-plaintiff. *Id.*

### Conclusion

Based on the undisputed material facts and the applicable law, the plaintiffs respectfully request this Honorable court to deny summary judgment to defendant StrongBuilt with respect to any and all claims.

/s/ Dennis R. Weaver

Dennis R. Weaver ASB-1287-V51D)

**OF COUNSEL:**
WEAVER TIDMORE, LLC
200 Cahaba Park Circle, Suite 214
Birmingham, Alabama 35242
Phone: 205-980-6065
Fax: 205-980-6165
E-mail: rweaver@weavertidmorelaw.com

## **CERTIFICATE OF SERVICE**

I, do hereby certify that I have this 5th day of May, 2008, served a true and correct copy of the foregoing by U.S. Mail, postage prepaid and by electronically filing the same through the CM/ECF system to:

David A. Lee, Esq.
Parsons, Lee & Juliano, PC
2801 Highway 280 South
300 Protective Center
Post Office Box 530630
Birmingham, Alabama  35223-2480
(205) 326-6600

/s/ Dennis R. Weaver
_____
OF COUNSEL